## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **MIRANDA MURRAY and BRANDI MILFORD,** individually and on behalf of themselves and all others similarly situated, | Case No.: |
| Plaintiffs, | |
| v. | **CLASS ACTION COMPLAINT** |
| | **Jury Trial Demanded** |
| **ALL-CLAD METALCRAFTERS, LLC, and GROUPE SEB USA, INC.,** | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Miranda Murray and Plaintiffs Brandi Milford ("Plaintiffs"), by and through undersigned counsel, on behalf of themselves and all others similarly situated, bring this Class Action Complaint against All-Clad Metalcrafters, LLC and Groupe SEB USA, Inc. (collectively "All-Clad" or "Defendants") and in support allege, upon information and belief and based on the investigation to date of their counsel, as follows:

## NATURE OF ACTION

1.      All-Clad is one of the largest cookware companies in the United States. It designs, manufactures and sells a variety of metal crafted products, including kitchen appliances, bakeware, kitchen tools, and cookware.

2.      All-Clad's bonded cookware portfolio includes pots, pans, skillets, and "sauciers." Its D3, D5® and LTD[1] Stainless Steel Collections ("Cookware" or the "Products"), which are the subject of this action, are among All-Clad's top selling products. On its website, All-Clad boasts

---

[1] D3, D5, and LTD Cookware is often identified or referred to as d3, d5, and ltd by All-Clad and retailers.

that "All-Clad bonded cookware is still handcrafted in Canonsburg, Pennsylvania, with American-made steel--the same way it was four decades ago. It is still widely sought after by the world's top chefs and passionate home cooks."[2] Over the course of those four decades, All-Clad has gained the trust of consumers, who reasonably believe that All-Clad products are made with quality materials, and that the All-Clad products can be used safely, as intended and marketed.

3.     The Cookware, as described by All-Clad, is "compatible on all induction as well as traditional cooktops,"[3] and "[s]afe for gas, electric, ceramic, and induction stovetops."[4] All-Clad further represents that its "unparalleled level of durable craftsmanship and performance is guaranteed to last a lifetime."[5]

4.     All-Clad offers several collections of multi-ply constructed cookware, including the D3, D5, and LTD Stainless Steel Collections.  The designs of the Cookware are substantially similar, and the three are the subject of this class action lawsuit.

5.     On April 16, 2020, the undersigned filed a similar class action in California on behalf of a California Class: *Mears v. All-Clad Metalcrafters, LLC, et al.*, 3:20-cv-02662-SI (N.D. Cal.) ("California Action").  Prior to undersigned counsel's filing of the California Action, on April 16, 2020, the Cookware was uniformly marketed, labeled, and represented to consumers as being conveniently dishwasher-safe, to make clean-up easier for consumers.  In fact, on its

---

[2] https://www.allcladchefs.com/about  (last accessed November 5, 2020).
[3] https://www.all-clad.com/d3-stainless-3-ply-bonded-cookware-set-nonstick-2-piece-fry-pan-promo-set-8-10-inch.html (last accessed November 5, 2020).
[4] https://www.all-clad.com/d3-compact-3-ply-bonded-cookware-set-5-piece-set.html (last accessed November 5, 2020).
[5] Exhibit A (Limited Lifetime Warranty).

website, All-Clad represented its stainless-steel cookware as "dishwasher-safe,"[6] even including a picture on its website of this cookware inside of a dishwasher for consumers to further appreciate the convenience of this dishwasher-safe feature.[7]



6.      All-Clad even went further by advising consumers that "[i]t is recommended that before you use your Stainless Steel All-Clad you wash it in the dishwasher first to remove any manufacturing residues and this will help to keep it shiny."[8]

7.      Since the filing of the California Action, and upon information and belief, in response to that filing, Defendants have removed many, if not most, of the dishwasher safe representations from their website, and now recommend that consumers, "Hand wash to maintain the pan's beauty."[9]

8.      While All-Clad has removed many of the dishwasher safe representations, some still remain on its website under the D3 Cookware "Description" as follows: "Dishwasher safe

---

[6]  https://www.all-clad.com/c/D5-Stainless-3-Qt-Essential-Pan-/p/8701005595 (last accessed April 1, 2020); https://www.all-clad.com/d3-compact-3-ply-bonded-cookware-set-5-piece-set.html (last accessed November 5, 2020).

[7]  https://www.all-clad.com/c/D5-Stainless-3-Qt-Essential-Pan-/p/8701005595 (last accessed April 1, 2020).

[8]  *Id.*

[9]  https://www.all-clad.com/d5-stainless-brushed-5-ply-bonded-cookware-saute-pan-with-lid-3-quart.html (Last Accessed October 15, 2020).

and compatible for all cooking surface,"[10] and "Dishwasher safe Made in USA Lifetime warranty."[11]

9.     Further, All-Clad's authorized retailers, including *inter alia*, Williams Sonoma, Bed Bath & Beyond, and Bloomingdales, continue to market the Cookware as dishwasher safe.[12]

10.     Although All-Clad is aware of its material misrepresentations regarding the Cookware's dishwasher safety, it continues to defraud consumers and its own retailers.

11.     Likewise, even though All-Clad is aware that the Cookware is not dishwasher safe, it continues to replace the Cookware under its warranty with equally defective Cookware.

12.     The cost of a single piece of the Cookware is between $80.00 and $500.00 MSRP, and the cost of an entire set is priced as high as $1,600.00 MSRP.

13.     As more fully described below, every piece of the Cookware contains a common defect that makes it unreasonably dangerous, as during the approved dishwasher cleaning, the second layer of aluminum deteriorates away from the already razor thin stainless steel top layer (cooking surface), leaving this top layer protruding from the Cookware and creating a condition too sharp for human contact, and unsuitable for its intended use  ( "Defect").

14.     Accordingly, the Cookware is unreasonably dangerous and not fit for household

---

[10] https://www.all-clad.com/d3-stainless-3-ply-bonded-cookware-fry-pan-14-inch.html (Last Accessed October 15, 2020).  These representations remain on All-Clad's website.

[11] https://www.all-clad.com/d3-compact-3-ply-bonded-cookware-set-5-piece-set.html (Last Accessed October 15, 2020). These representations remain on All-Clad's website.

[12] https://www.williams-sonoma.com/products/all-clad-tri-ply-stainless-steel-10-piece-cookware-set/?pkey=call-clad-tri-ply-stainless-steel&isx=0.0.253; https://www.williams-sonoma.com/products/all-clad-d5-stainless-steel-10-piece-cookware-set/?pkey=call-clad-d5-stainless-steel&isx=0.0.413; https://www.bedbathandbeyond.com/store/product/all-clad-d3-stainless-steel-10-piece-cookware-set/1018489368?keyword=all-clad-d3; https://www.bedbathandbeyond.com/store/product/all-clad-d5-reg-brushed-stainless-steel-cookware-collection/203666?opbthead=true&ta=typeahead&keyword=all-clad-d5; https://www.bloomingdales.com/shop/product/all-clad-d5-stainless-brushed-7-piece-cookware-set-100-exclusive?ID=3670031&CategoryID=3865 (Last Accessed October 15, 2020).

use.

15.     The Defect and its damage to the Cookware is not a result of consumer misuse or error. Ordinary, foreseeable, and even recommended use of the dishwasher to clean the Cookware can cause the aluminum to deteriorate in a way which creates a sharp, hazardous condition, and renders the Cookware too unsafe to use.

16.     All-Clad has undertaken a deliberate and willful pattern of conduct (including taking active measures) aimed at concealing the Cookware Defect from its consumers, including the Plaintiffs.

17.     At all relevant times, All-Clad knew or should have known about the Defect but nevertheless marketed, advertised, and sold the Cookware without warning consumers that the Cookware is likely to deteriorate in the dishwasher causing the top stainless steel layer to become nearly razor sharp, leaving it in a hazardous condition, and unsuitable for safe cooking or cleaning.

18.     Indeed, rather than providing consumers with new, non-defective Cookware after it has deteriorated and became hazardous to use, All-Clad either replaced the Cookware with the same defective Cookware, improperly denied the warranty claim, and/or instructed the consumer to stop using citrus or acidic-based detergent in the dishwasher. Thus, All-Clad failed to disclose the known Defect or provide the customer with a non-defective, dishwasher safe replacement product.

19.     The replacement Cookware also fails, or is likely to fail in the same manner, leaving consumers fearful of unsafe, sharp edges, or unable to clean the Cookware in the dishwasher, as was advertised and intended.

20.     As a direct and proximate result of All-Clad's concealment of the Defect, its failure

CLASS ACTION COMPLAINT

to warn customers about the Defect before their purchase of the Cookware, and its failure to recall the Product, remedy the Defect, or provide warnings or proper care and usage instructions, Plaintiffs and other similarly situated customers ("Class" or "Class Members") purchased and used All-Clad's defective Cookware.  Plaintiffs and Class Members were unaware of the Defect at the time they purchased the Cookware.  Had Plaintiffs and Class Members known the Cookware contained a defect rendering it unable to be washed in a dishwasher without causing damage to the Cookware, they would not have purchased the Cookware or would have paid substantially less for the Cookware.

21.    Plaintiffs and putative Class Members' Cookware have failed (or are likely to fail) as a result of the Defect when Plaintiffs and Class Members use the Products as intended, resulting in damage to the Cookware, and leaving it unsuitable for safe cooking or cleaning.

22.    Plaintiffs and all putative Class Members' Cookware contain the same Defect at the point of sale, and pose substantially the same safety risk to Plaintiffs, Class Members, consumers, and the public. All-Clad's Cookware cannot be used safely for its intended purpose of preparing meals at home after cleaning the Cookware in the dishwasher as represented.

## **PARTIES**

23.    Plaintiff Miranda Murray is a resident and citizen of Buford, Gwinnett County, Georgia.

24.    Plaintiff Brandi Milford is a resident and citizen of Scottdale, Dekalb County, Georgia.

25.    Defendant All-Clad Metalcrafters, LLC is a Delaware corporation with its principal place of business located in Canonsburg, Pennsylvania.

26.    Defendant Groupe SEB USA, Inc. is a Delaware corporation with its principal

place of business located in Millville, New Jersey.

27.     Defendants All-Clad Metalcrafters, LLC and Groupe SEB USA, Inc. design, construct, manufacture, distribute, advertise, market, direct the marketing and advertising of, and sell the Cookware in Georgia, and throughout the United States.

28.     At all times relevant herein, both Defendants jointly transacted and conducted business in Georgia and continue to do so today.

29.     Defendants are the agents and/or alter egos of each other and the corporate interests of Defendants have merged so that they, in effect, have operated as one and the same entity for the purpose of designing, constructing, manufacturing, distributing, advertising, marketing, directing the marketing and advertising of, and selling the Cookware.

30.     Defendants used, commingled, and combined their resources to design, construct, manufacture, distribute, advertise, market, and sell the Cookware.

31.     At all times relevant herein, Defendants engaged in actual and/or *de facto* joint ventures in relation to the Cookware operations.

## JURISDICTION AND VENUE

32.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (1) there are one hundred or more (named or unnamed) class members, (2) there is an aggregate amount in controversy exceeding $5,000,000.00, exclusive of interest and costs, and (3) there is minimal diversity because Plaintiffs and Defendants are citizens of different States.

33.     This Court may exercise personal jurisdiction over Defendants because Defendants do substantial business in this State and within this District, receive substantial compensation and

profits from the marketing, distribution, and sales of product in this District, and have engaged in the unlawful practices described in this Complaint in this District.

34.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## COMMON FACTUAL ALLEGATIONS

35.     All-Clad has been a household name that consumers and professionals have relied upon for safe, quality cooking for more than 40 years.   Beginning in 1967 as a "small metallurgical company [Clad Metals] that specialized in formulating bonded metals for a variety of industries," All-Clad Metalcrafters was eventually established just four years later in 1971.[13] At that time, All-Clad "began producing professional quality bonded cookware for working chefs and avid home cooks."[14]

36.     According to the company's website, "[t]he brand flourished as early adopters realized the cookware's extraordinary properties and exemplary cooking performance," and further, that "[i]t is still widely sought after by the world's top chefs and passionate home cooks."[15]

37.     Upon information and belief, All-Clad was the first to design, patent, and manufacture multi-ply constructed stainless steel cookware, including the D5 Cookware[16] and possibly the D3 and LTD Cookware.

---

[13] https://www.all-clad.com/About/history (Last Accessed April 13, 2020).

[14] *Id.*

[15] *Id.*

[16] https://www.all-clad.com/Collections (Last Accessed April 13, 2020) ("The only cookware of its kind, All-Clad D5 Brushed offers a patented technology with five alternating layers of stainless steel and aluminum…").

38.     Currently, All-Clad sells the Cookware through hundreds of retailers across the country, including online retailers such as Amazon.com, Williams-Sonoma, Bed Bath & Beyond, Bloomingdale's, Crate & Barrel, cutleryandmore.com, Kitchen Kapers, Macy's, Metro Kitchen, Sur la Table, The Cook's Warehouse, and Wayfair.

39.     In selling and distributing its Cookware, All-Clad has represented it possesses the following notable features and specifications:[17]

- Dishwasher Safe;

- Multi-Ply, Bonded Stainless Steel Construction; and

- 18/10 Stainless Steel Top Layer (Cooking Surface), followed by a Second Aluminum Layer.

| D3 |  |
|---|---|

[17] https://www.all-clad.com/Collections (Last Accessed April 13, 2020).



40.    Upon information and belief, since the April 2020 *Mears* filing, All-Clad has discontinued the sale of LTD and replaced it with a new anodized product called "HA1 Hard Anodized" cookware, which does not contain a layer of aluminum and is represented to be dishwasher safe.[18]

41.    Prior to the April 2020 *Mears* filing, All-Clad represented to consumers that the

---

[18] https://www.all-clad.com/ha1-hard-anodized-nonstick-cookware-set-2-piece-fry-pan-saute-pan-with-lid-set-10-inch-4-quart.html (Last Accessed October 15, 2020).

Cookware was "completely dishwasher safe."[19] All-Clad further advised consumers that "[i]t is recommended that before you use your Stainless Steel All-Clad you wash it in the dishwasher first to remove any manufacturing residues and this will help to keep it shiny."[20]

42.     In addition, All-Clad was advertising its stainless-steel Cookware with a photograph of the Cookware in a dishwasher, with a representation that its dishwasher safe feature is "**Convenient**" (shown with a bold heading) and claims that the Cookware is "made with quality materials for a lifetime of beauty and performance."[21] Each of the All-Clad Cookware pieces and collections, until recently, was represented similarly.[22]



43.     All-Clad is engaged in the business of designing, constructing, manufacturing, warranting, marketing, advertising, distributing, and selling the Cookware.  All Cookware is branded with the "All-Clad" logo just under the Cookware handles and is visually recognizable as such.

---

[19] https://www.all-clad.com/search?%21q=&text=dishwasher (FAQs)(last accessed April 13, 2020); *see also* Exhibit A.

[20] *Id.*

[21] https://www.all-clad.com/c/D5-Stainless-3-Qt-Essential-Pan-/p/8701005595 (last accessed April 13, 2020).

[22] *E.g.,* https://www.all-clad.com/Cookware/D3-Compact-5-Piece-Set/p/8400001921 (last accessed April 13, 2020) ("Dishwasher safe for extra convenience.").

44.     The Cookware is used, and is intended by All-Clad to be used, for safe food preparation.  Prior to the *Mears* filing, All-Clad marketed, labeled and promoted the Cookware as dishwasher safe for convenient and low maintenance cleaning.

45.     In fact, the representation that the Cookware is dishwasher safe was so prevalent in All-Clad's marketing that it appears in the following locations:

    (a)     Cookware packaging;

    (b)     Use and Care Manuals and Instructions;

    (c)     On the All-Clad Website in numerous locations, including *inter alia*:

        i.   Stainless Steel Cookware Brochures;

        ii.  Stainless Steel FAQs; and

        iii. On individual piece and multi-piece specifications;[23]

    (d)     On authorized retailer websites, including in the *product title* itself, and also, *e.g.* in the product descriptions: "CONVENIENT AND LOW MAINTENANCE: All items included are dishwasher safe."[24]

46.     Accordingly, the dishwasher safe representations were a significant and material misrepresentation to Plaintiffs and the Class.

47.     The Cookware Collections have multiple pieces that are all designed and constructed with multi-ply stainless steel construction, most notably with a top surface layer of 18/10 stainless steel followed by a second layer of aluminum.

---

[23] *E.g.* https://www.all-clad.com/Cookware/Fry-Pans/D3-Stainless-12%22-Fry-Pan-with-Lid/p/8701005165; and https://www.all-clad.com/Cookware/D3-Compact-5-Piece-Set/p/8400001921. (Last Accessed April 13, 2020).

[24] https://www.amazon.com/stores/node/2581965011?_encoding=UTF8&field-lbr_brands_browse-bin=All-Clad&ref_=bl_dp_s_web_2581965011 (Last Accessed April 8, 2020).

CLASS ACTION COMPLAINT

48.     Each piece in the Cookware Collections contains the same Defect that renders it unreasonably dangerous, not fit for cooking and household use, and not safe for dishwashing.

49.     Expert investigation has revealed that the top layer of stainless steel (the cooking surface) of the Cookware is too thin, and when coupled with a second layer of aluminum that corrodes during any dishwasher cleaning, a hazardous condition is created.

50.     Specifically, the top layer of stainless steel begins as only 0.012 of an inch (four human hairs in thickness) when the steel/aluminum laminate for the Cookware is initially procured. When the steel/aluminum laminate sheet is deep-drawn into the shape of a pot or saucepan the thickness of the steel top layer at the edge is thinned further. When the edge of the Cookware is squared off and buffed down the edge of the top stainless steel layer is reduced yet more to approximately 50 microns, or 0.002 of an inch (approximately half of a human hair in thickness).

51.     The second layer of aluminum is much thicker than the top layer of stainless steel. When immersed with the stainless steel in the dishwashing detergent, the aluminum and steel form a galvanic couple that produces accelerated etching and corrosion of the aluminum.  As the aluminum corrodes away from the layers of stainless steel, what remains at the top is the 0.002 of an inch thin stainless steel layer protruding above the aluminum layer of the Cookware. Consequently, the thin, sharp top layer of stainless steel becomes an unreasonably dangerous condition for consumers trying to handle the Cookware, including as it is intended.

52.     In other words, the thinner aluminum layers on the multi-ply Cookware accelerate the corrosion due to the larger fractions of stainless steel as compared with aluminum.

53.     Thus, the top two layers of the Cookware are poorly selected, designed, constructed, and combined in a manner that leaves the Cookware *not* dishwasher safe.

54.     In fact, expert testing has revealed that deterioration of the aluminum layer begins after just one hour of regular dishwasher use, and significantly increases through continued dishwasher use.

55.     The Defect leads to the Cookware edges on the corroded pan edges deteriorating to the same cutting edge angle as a razor blade. The tips of the top layer become ragged, like a "worn" razor blade, protruding from the Cookware, and are unavoidably dangerous to the human touch.

56.     Exemplar cross-sections show the etching and loss of aluminum in the second and fourth layers of a D5 sample:



57.     Likewise, the cross-sections of a D5 sample as photographed below shows how the corrosion of the second and fourth aluminum layers (black) has caused them to pull away from the three stainless steel layers (grey), leaving protruding, sharpened stainless steel edges.



SEI   20kV   WD22mm   SS50        x20      1mm
AlClad Subject                                              27 Feb 2020



BEC   20kV   WD22mm   SS68        x500    50μm
AlClad Subject                                              27 Feb 2020

58.   Often when consumers contact All-Clad about the sharpened edges and deteriorated condition of their Cookware, All-Clad represents that citrus based dishwasher detergents are the cause of the problem.

59.   However, as all dishwashing detergents contain some degree of salt (a corrosive agent), the Cookware will deteriorate when cleaned in a dishwasher using any detergents. Thus, the Cookware is simply not dishwasher safe as represented by Defendants.

60.   This is further evidenced by All-Clad's removal of the dishwasher safe representations following the *Mears* filing.

61.   All-Clad's purported metallurgy and metal bonding experts who designed and constructed the Cookware knew or should have known that the combination of the thin stainless steel top layer coupled with the aluminum would result in unreasonably dangerous conditions when cleaned with any dish detergent in a dishwasher.

62.   Alternate designs for the Cookware exist that would have prevented the unreasonably dangerous condition created by the Defect, including the use of thicker stainless steel on the top layer (cooking surface), use of a non-corrosive material for the second layer, and/or changing the manner in which the Cookware's layers are manufactured.

63.   Further, All-Clad had the obligation to provide the proper warning for dishwasher use, and otherwise modify its packaging, care and use instructions, brochures, FAQs, and retailer representations prior to the filing of the *Mears* lawsuit in order to warn that the Cookware is not dishwasher safe, and should be hand washed to reduce the likelihood that the Defect will result in an unreasonably dangerous condition.

64.     All-Clad expressly and impliedly warranted, via packaging, authorized retailer promotion, user manuals, advertisements, brochures, samples, and/or models, that the Cookware is fit for the ordinary purpose for which such goods are sold.

65.     All-Clad expressly warrants in its Limited Lifetime Warranty ("the Warranty") that the Cookware "will be free from defects in material, construction, or workmanship for the lifetime of the product under normal use and following care instructions."  Exhibit A.

66.     The Defect renders the Cookware unfit for the ordinary purpose for which it is used, and it cannot be cleaned as All-Clad represents or the consumer desires.

67.     As a result of the Defect, the Cookware poses an unreasonable risk of harm to consumers and their property, including consumers' dishwashers and cabinetry as the edges become sharpened.

68.     Had Plaintiffs, Class Members, and the consuming public known that the Cookware was defective, posed an unreasonable risk of harm to themselves and their property, and would cause damage, they would not have purchased the Cookware or would have paid substantially less for it.

69.     As a direct, proximate, and foreseeable result of the Defect, Plaintiffs and Class Members suffered damages, including but not limited to: (a) the difference in value of the Cookware as warranted and the Cookware received; (b) loss of use of the Cookware; (c) property damage; and (d) consequential damage.

## **PLAINTIFFS' FACTS**

### *Plaintiff Miranda Murray's Experience*

70.     Beginning in the spring of 2018, Ms. Murray became interested in purchasing new dishwasher safe cookware for cooking at home.  Consequently, Plaintiff performed internet

research on the cookware and reviewed All-Clad's representations about the quality and dishwasher safety on various sites. Based on All-Clad's reputation and representations by All-Clad that the D3 Cookware Collection was of good quality, and specifically and particularly, that it was dishwasher safe, Plaintiff purchased a 10-piece D3 Cookware set from Bed Bath & Beyond in May of 2018 for approximately $600.00.

71.     From the time of purchase until the incident described below, Plaintiff used the Cookware as intended, cleaning it in the dishwasher in accordance with the use and care instructions, and otherwise maintaining it in a reasonable manner as an owner of cookware.

72.     Additionally, in September of 2019, Plaintiff purchased two additional D3 Cookware frying pans for approximately $150.00.   Plaintiff has not cleaned these pieces in the dishwasher.

73.     On or around November of 2019, Ms. Murray went to use her Cookware and upon cut her finger on the edges of one of the pans.  Consequently, she inspected the edges of the Cookware and discovered that the edges were sharp.

74.     Ms. Murray performed internet research and discovered that the deteriorated condition of the Cookware was common, and that All-Clad does not have replacement Cookware that is dishwasher safe.

75.     Given that All-Clad continues to replace the Cookware with more defective Cookware that is not dishwasher safe, any warranty exchange would have been futile.

76.     As All-Clad fraudulently concealed the Defect from Plaintiff before her purchase, as well as after it was being used, Plaintiff did not suspect (and had no reason to suspect) that there was anything wrong with her Cookware until the Defect manifested.

77.     Given the dangerous condition of the May of 2018 Cookware, Ms. Murray has

CLASS ACTION COMPLAINT

stopped using it altogether.

78.    The Cookware purchased in 2019 has not been cleaned in the dishwasher and has not deteriorated.

### *Plaintiff Brandi Milford's Experience*

79.    In the summer of 2019, Ms. Milford became interested in purchasing new dishwasher safe cookware for cooking at home.  Consequently, Plaintiffs performed internet research on the cookware and reviewed All-Clad's representations about the quality and dishwasher safety on various sites.  Based on All-Clad's reputation and representations by All-Clad that the D3 and D5 Cookware Collections were of good quality, and specifically and particularly, that it was dishwasher safe, Plaintiff purchased multiple pieces of cookware.

80.    Specifically, in July of 2019, Ms. Milford purchased a 10-piece set of D3 Cookware from Sur la Table for $594.96, a D5 fry pan set from Williams-Sonoma for $159.96

81.    From the time of purchase until the incident described below, Plaintiffs used the Cookware as intended, cleaning it in the dishwasher in accordance with the use and care instructions, and otherwise maintaining it in a reasonable manner as an owner of cookware.

82.    In the fall of 2019, following dishwasher cleaning, Ms. Milford noticed some slight deterioration around the edges of the Cookware.  Despite being careful with her use and cleaning, Ms. Milford cut her finger on the edge of one of her pots in the Spring or Summer of 2020.

83.    A demonstrative photograph of Ms. Milford's Cookware is shown below:



84.     Following the discovery of the deteriorated and sharp edges, Ms. Milford contacted Williams-Sonoma about the deteriorated condition.

85.     Ms. Milford performed internet research and discovered that the deteriorated condition of the Cookware was common, and that All-Clad does not have replacement Cookware that is dishwasher safe.

86.     Given that All-Clad continues to replace the Cookware with more defective Cookware that is not dishwasher safe, any warranty exchange would have been futile.

87.     As All-Clad fraudulently concealed the Defect from Plaintiff before her purchase, as well as after it was being used, Plaintiff did not suspect (and had no reason to suspect) that there was anything wrong with her Cookware until the Defect manifested.

88.     Given the dangerous condition of her Cookware, Ms. Milford has stopped using it altogether.

89.     For both Plaintiffs, the Cookware did not reach the end of its useful service life- or

even one year- before it became unreasonably dangerous, and now is unsuitable for regular use or cleaning. Had Plaintiffs known of the Defect, they would have either not purchased the Cookware or would have paid less than they did. Therefore, she did not receive the benefit of their bargain.

90.     On January 6, 2020, Plaintiffs put All-Clad on notice Breach of Warranties; and Violations of the O.C.G.A. § 10-1-370, et seq., the Georgia Uniform Deceptive Trade Practices Act and O.C.G.A § 10-1-390, et seq., the Georgia Fair Business Practices Act.

## ALL-CLAD'S ACTUAL OR
## CONSTRUCTIVE KNOWLEDGE OF THE DEFECT

91.     All-Clad knew or should have known when it sold the Cookware to the public that the Cookware suffered from the Defect, and that the Defect caused the Cookware to deteriorate and become unreasonably dangerous to use during its expected useful life, represented an unreasonable risk that the Cookware would harm consumers and their property when the edges became sharp, and might result in significant personal injury and/or property damage to consumers and the public.

92.     All-Clad's knowledge of these facts is established through consumer complaints, including several years of public internet posts complaining that the Cookware failed and became harmful during normal use. Despite its knowledge, All-Clad did not remedy or eliminate the Defect in the Cookware or remove it from the stream of commerce.

93.     Instead, All-Clad replaced the defective Cookware with equally defective Cookware, improperly denied warranty claims, and often misrepresented to consumers that citrus dish pods and citrus detergents were the cause of the deterioration and sharpened edges.

94.     All-Clad's actual knowledge of the Defect is evidenced by its reported responses to consumer complaints through retailers, and also its response to one complaint through https://www.saferproducts.gov, cited *infra*.

95.     While there are voluminous reports regarding general deterioration of the Cookware's metals, there are many that specifically describe thin, sharpened edges, which have led to fingers and hands being cut. The online reports date back to purchases made as early as 2013 and continue through present, indicating that All-Clad has likely known about the Defect for close to a decade and have failed to remedy the Defect, recall the products, or provide appropriate warnings regarding the Defect.

96.     All-Clad's reported responses to customer complaints, as included *infra*, demonstrate that not only is All-Clad aware of the dangerous and potentially harmful defect, it attempts to actively conceal the dangerous defect from consumers and otherwise fails to honor its Warranty.

97.     Customer complaints are available online regarding the Cookware.  A small sample of the online complaints follows.

98.     In December of 2016, a consumer with several pieces of All-Clad cookware complained of similar issues through saferproducts.gov:[25]

> I was given a gift of All Clad LTD pots and pans set. A month later the product started to change. The outside layer of the pots and pans started to warp and become very sharp. My family and I have sustained injury from using them, and we have damaged our cooktop as well. The pots have caused our hands to bleed from use. We followed all of the care instructions, we washed by hand with a gentle soap and soft cloth and use our electric cooktop, so no high heat is used. We have well water that is pure water. Once we noticed the problem with the cookware we sent an email to the company. They responded by saying me as the consumer must have placed them in the dishwasher, or used acid to wash the pots and pans. We also were acccused [sic] of cleaning them with drano. The company claims to have a lifetime warranty, but they will not replace my pots. They have told me for safety reasons to discard my pots because they are causing harm. Company claims they cannot do anything for me because they are not in their eyes defective. If they are not defective, why do I have to discard them.

---

[25] https://www.saferproducts.gov/ViewIncident/1614618 (Last Accessed April 9, 2020).

In response to this consumer complaint, Defendant Groupe SEB USA, Inc., responded generically with:[26]

> Groupe SEB USA, as the parent company of the All-Clad brand, has received this notification. We value your feedback and will give priority to investigating your concerns. If you have not contacted us already, please call 800-255-2523 or contact us through our website www.all-clad.com. Please reference your incident number of 161212-000388 so you are directed to the right representative.

99.    In May of 2017, one consumer of D3 Cookware posted a photograph of the cut on her hand along with the following:[27]

> I bought this pot in November 2014 but the rim core eroded leaving the sharp edges of the inner and outer shell. So I purchased another one eight months ago in August 2016. Within a few months the same issue occurred. I picked the pot up a couple of days ago and inadvertently cut the back of my thumb on the edge. The attached photo tells the story. When first purchased the rim was perfectly level. I have a large collection of All-Clad pots but these Tri-Plys are just awful and I won't be buying any more.

100.    In response to this D3 complaint, another consumer commented that he or she had a similar experience with their D5 Cookware purchased in 2013:[28]

> We've had the same thing happen to us with the D5 line. My husband and I both, worse than a paper cut because it's metal. Ours were purchased Dec 2013, so apparently it's a common issue. We had the Calphalon Tri Ply prior to buying the All Clad and honestly I prefer my previous set. However, the newer set of Calphalon Tri Ply is not the quality of the original anymore. Still on a search for quality multi clad pans.

---

[26] *Id.*

[27] https://www.amazon.com/gp/customer-reviews/R16Y3IESIBD08L/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B005GFYH6M (Last Accessed April 9, 2020).

[28] *Id.* at Comment 1.

101.    Again in January of 2018, another consumer reported sharpened edges with his or

her D3 Cookware, through Sur la Table's website:[29]

> **DON'T purchase these. You'd be wearing bandages.**
> I bought one of each size of these relatively less expensive All-Clad
> stainless saucepans with lids when they were offered at a special sale
> price. The top edges around these pans are SHARP! The upper pan
> edges will CUT your hands.
>
> No matter how carefully I rinse these pans before loading into the
> dishwasher, invariably I find myself bleeding from inadvertently
> touching the top of these saucepans. Why would they make them as
> dangerous                          as                          knives?!
>
> The pans are like sliced tubes of stainless steel, with handles riveted
> on. SHARP EDGES!!!!!!

102.    In August of 2018 another consumer noted on Amazon.com regarding her D3

Cookware: "The top edge on this pot was so sharp it cut my husband's hand when washing the

first time. Dangerous."[30]

103.    Numerous other complaints relate to the deterioration of the Cookware's metals

and to All-Clad's systematic failure to honor its warranty.

104.    In conjunction with All-Clad's experience designing and selling the Cookware,

these facts and complaints illustrate that All-Clad knew or should have known of the Defect.

105.    All-Clad has a duty to disclose the Defect and to not conceal the Defect from

Plaintiffs and Class Members. All-Clad's failure to disclose, or active concealment of, the serious

safety Defect places Plaintiffs and Class members at risk of personal injury and/or property

damage.

---

[29] https://www.surlatable.com/pro-1451830-skillet-ss-10in-wlid/PRO-1451830.html (Last
Accessed April 9, 2020).

[30] https://www.amazon.com/product-
reviews/B005GFYH6M/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all
_reviews#reviews-filter-bar (Last Accessed April 9, 2020).

106.    Through at least the filing date of this complaint, All-Clad is still selling the defective Cookware, concealing the Defect, failing to notify consumers of the safety Defect, failing to notify consumers that the Cookware is not dishwasher safe, and failing to recall the Cookware.

107.    Moreover, All-Clad continues to falsely represent through written warranties that the Cookware is free from defect, is of merchantable quality, and will perform dependably for the lifetime of the Cookware.

108.    When corresponding with customers, All-Clad does not disclose that the Cookware suffers from the Defect, is not dishwasher safe, and is a safety hazard. As a result, reasonable consumers, including Plaintiffs and Class Members, purchased and used, and continue to purchase and use the Cookware and rely on the "dishwasher safe" representations, even though it is unsafe to do so.

109.    When All-Clad replaces its Cookware, it fails to disclose the known Defect and replaces the defective Cookware with equally defective Cookware. Some consumershave purchased different pieces over time, all of which have failed or will fail in the same manner. Likewise, other consumers, have received replacement Cookware through All-Clad's Warranty, which have failed or will fail in the same manner.

110.    Had Plaintiffs, Class Members, and the consuming public known that the Cookware was defective, not dishwasher safe, posed an unreasonable risk of harm to themselves and their property, and would cause personal injury and other damage, they would not have purchased the Cookware.

111.    All-Clad has wrongfully placed on Plaintiffs and Class Members the burden, expense, and difficulty involved in discovering the Defect, replacing the Cookware (potentially multiple times), and paying for the cost of damages caused by the Defect.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

112.    All-Clad had actual knowledge for years that the Cookware contains the Defect that causes the metals to deteriorate during dishwasher cycling in a way that creates a sharp, hazardous condition, and renders the Cookware too unsafe to use.

113.    Although All-Clad was aware of the dangerous Defect, and has removed many of its dishwasher safe representations on its website, it still has taken no steps to warn Plaintiffs or the Class of such Defect and the dangers the Defect poses.

114.    At least by 2016, if not earlier, All-Clad had received numerous reports from consumers of incidents of metal deterioration, as well as thinning and sharp edges, creating dangerous conditions which have led to personal injury and other damages.

115.    All-Clad knew or should have known that the thin stainless steel cooking surface, combined with aluminum would corrode in the dishwasher with any detergent, and lead to the unreasonably dangerous condition being reported by Plaintiffs and other consumers.  Even with this knowledge and reports of unreasonably dangerous conditions caused by the Defect, All-Clad failed to issue a recall, warn consumers, or take any other  affirmative steps to correct the problem in the Cookware already in the stream of commerce.  Nor did All-Clad take steps to alert members of the Class about the problem or change all of its packaging, brochures, use and care instruction, website representations, or authorized retailer descriptions and specifications.

116.    While All-Clad represents to certain consumers making warranty claims that the deterioration occurs when citrus based detergents are used during dishwashing, it failed to issue a

recall, warn consumers, or take any other affirmative steps to correct the problem in the Cookware already in the stream of commerce, and All-Clad did not take steps to alert members of the Class or its retailers about the problem or change its packaging, brochures, use and care instruction, website representations, or authorized retailer descriptions and specifications.

117.  Despite its knowledge, All-Clad concealed the fact that the Cookware was defective,  even though it had a duty to disclose the Defect.

118.  All-Clad made affirmative and material misrepresentations to consumers during the sale of the Cookware, including that the Cookware was free of defects, was dishwasher safe, and that the Cookware would be replaced for the lifetime of the product.

119.  In fact, All-Clad's Limited Lifetime Warranty provides:[31]

> From the date of your purchase in the U.S. or Canada, All-Clad Metalcrafters, LLC ("All-Clad") warrants that any All-Clad cookware item purchased by you, the original purchaser, from All-Clad or an All-Clad authorized retailer will be free from defects in material, construction, or workmanship for the lifetime of the product under normal use and following care instructions. All-Clad will repair or replace the All-Clad cookware product in the country of purchase that is covered by this warranty.

120.  However, the Warranty fails of its essential purpose for the following reasons:

(a)  All-Clad consistently replaces the Cookware with more defective Cookware, and without remedying the actual Defect or providing adequate warnings regarding dishwashing;

(b)  All-Clad has misrepresented that the Cookware, including replacement Cookware under the Warranty, will not deteriorate into an unreasonably dangerous condition if the consumer avoids usage of citrus based dishwasher pods or detergents; and

(c)  Other ways which may be revealed during discovery or at trial.

---

[31] Exhibit A.

121.    As described herein, All-Clad breached this Warranty at the time it shipped the Cookware (and at the point of sale to consumers) because the Cookware was defective when it came off of the assembly line. Thus, at the time the defective Cookware was shipped and sold to consumers, All-Clad was already in violation of the express warranty.

122.    Further, because All-Clad does not have non-defective, dishwasher safe versions of the Cookware available to replace the non-dishwasher safe Cookware, it is unable to fulfill its warranty obligations at the point of purchase, or anytime thereafter, and the Warranty is therefore breached immediately upon purchase.

123.    In addition, the Warranty is unconscionable as follows:

(a)    In its limitation to the first owner without transferability;

(b)    In its disclaimer of warranties;

(c)    In its exclusion of Cookware purchased from unauthorized retailers which would require consumers to perform research to confirm;

(d)    In its exclusion of certain conditions which precede the eventual deterioration leading to the thin, sharpened, and unreasonably dangerous conditions described herein; and

(e)    In its imitation of remedies, including disclaimer of consequential damages.

124.    The Warranty is further unconscionable given All-Clad's knowledge of the Defect, the existence of the Defect at the point of sale, All-Clad's failure to disclose the Defect at the time of sale, during consumers' use of the Cookware, and during warranty communications, and other reported failures to which All-Clad has or had knowledge.

125.    All-Clad made affirmative misrepresentations to Plaintiffs and consumers during warranty claims and other correspondence with consumers lodging complaints, including that the

problems were solely caused by the use of citrus based dish detergents in the dishwasher; their Cookware failures were anomalous; they failed to follow the use and care instructions; and in other ways to be discovered.

126.   At all times, All-Clad concealed that the Cookware and any replacements were defective.

127.   All-Clad's concealment was material to Plaintiffs and Class Members' decision to purchase the Cookware, accept replacement Cookware, and continue to purchase additional Cookware pieces.  All-Clad's concealment  was knowing, and All-Clad intended to mislead Plaintiffs and Class Members into relying upon it. Accordingly, Plaintiffs and Class Members relied upon All-Clad's concealment of these material facts and suffered  injury as a proximate result of that justifiable reliance.

128.   The Defect in the design and/or manufacture of the Cookware was not reasonably detectible to Plaintiffs and members of the Class at the time of purchase.

129.   All-Clad actively and intentionally concealed the existence of the Defect and failed to  inform Plaintiffs or Class Members of the existence of the Defect at all times, including when Class Members contacted All-Clad about the problems.  Accordingly, Plaintiffs and Class Members' lack of awareness was  not attributable to lack of diligence on their part.   In fact, Plaintiffs and Class Members' use of the dishwasher to clean the Cookware was done pursuant to All-Clad's instructions and representations that the Cookware is dishwasher safe.

130.   All-Clad's statements, words, and acts were made for the purpose of suppressing the truth that the Cookware and replacements were defective, and to induce Plaintiffs and Class Members to purchase the Cookware based on the convenience of cleaning it in the dishwasher. Consequently, these were material misrepresentations.

131.    All-Clad concealed the defect for the purpose of delaying Plaintiffs and Class Members from filing a complaint on their causes of action.

132.    As a result of All-Clad's active concealment of the Defect and/or failure to inform Plaintiffs and members of the Class of the Defect, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.  Furthermore, All-Clad is estopped from relying on any statutes of limitations in light of its active concealment of the  defective nature of the Cookware.

## CLASS ACTION ALLEGATIONS

133.    Plaintiffs brings this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following Class:

> During the fullest period allowed by law, all persons residing in the State of Georgia who purchased any All-Clad Cookware from the D3, D5, and LTD Stainless Steel Collections.

134.    Plaintiffs reserves the right to modify the class definition if necessary to include additional All-Clad Cookware collections or pieces with the same Defect.

135.    <u>Numerosity</u>: The members of each Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it consists of thousands of people geographically disbursed throughout Georgia. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The Class is readily  identifiable from information and records in the possession of All-Clad and its authorized retailers.

136.    <u>Commonality</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over questions that may affect only individual Class Members

because All-Clad has acted on grounds generally applicable to the Class.  Such common legal or

factual questions include, *inter alia*:

    (a)    Whether the Cookware is defective;

    (b)    Whether the Cookware is defectively designed and/or manufactured;

    (c)    Whether the Cookware is dishwasher safe;

    (d)    Whether All-Clad knew or reasonably should have known about the Defect prior to distributing the Cookware to Plaintiffs and the Class;

    (e)    Whether All-Clad knew or reasonably should have known the Cookware was not dishwasher safe when All-Clad packaged, marketed, advertised, specified, and otherwise represented it was;

    (f)    Whether All-Clad concealed from and/or failed to disclose to Plaintiffs and the Class the problems with the Cookware;

    (g)    Whether All-Clad knew or reasonably should have known about the Defect after distributing the Cookware to Plaintiffs and the Class;

    (h)    Whether All-Clad knew or reasonably should have known the Cookware was not dishwasher safe after distributing the Cookware to Plaintiffs and the Class;

    (i)    Whether All-Clad breached express warranties relating to the Cookware;

    (j)    Whether All-Clad breached the implied warranty of merchantability;

    (k)    Whether All-Clad's Warranty was unconscionable in any way;

    (l)    Whether All-Clad engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective Cookware.

    (m)    Whether All-Clad was negligent in its failure to adequately test;

    (n)    Whether All-Clad was negligent in its failure to warn;

    (o)    Whether All-Clad is strictly liable for its defective design and/or manufacture of the Cookware;

    (p)    Whether Plaintiffs and the Class are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

    (q)    Whether All-Clad should be enjoined from selling and marketing its defective Cookware; and

    (r)    Other issues which may be revealed in discovery.

    137.   <u>Typicality</u>:  Plaintiffs' claims are typical of the members of the Class as all

members of the Class are similarly affected by the same Defect and All-Clad's actionable conduct. Plaintiffs and all members of the Class purchased the Cookware with a Defect that makes the Cookware inherently dangerous and not suitable for safely cooking or cleaning as represented. In addition, All-Clad's conduct that gave rise to the claims of Plaintiffs and members of the Class (*i.e.* designing and manufacturing defective Cookware, delivering defective Cookware, concealing the Defect, and breaching warranties, statutory, and other duties respecting the Cookware) is the same for all members of the Class.

138.   <u>Adequacy of Representation</u>: Plaintiffs will fairly and adequately protect the interests of the Class because he has no interests antagonistic to, or in conflict with, the Class that Plaintiffs seeks to represent. Furthermore, Plaintiffs has retained counsel who are experienced and competent in the prosecution of complex class action litigation.

139.   <u>Injunctive/Declaratory Relief</u>: The elements of Rule 23(b)(2) are met. Defendants will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the Defect. Defendants have acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

140.   <u>Predominance</u>: The elements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual Class Members, and a class action is the superior method for the fair and efficient adjudication of this controversy. The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of hundreds or

thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for those similarly situated to the Plaintiffs.

141.    Plaintiffs knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

142.    All-Clad has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief  with respect to the Class as a whole.

143.    Defendants were put on direct notice of their breaches of warranties, violations of O.C.G.A. § 10-1-370, *et seq.*, and O.C.G.A § 10-1-390, *et seq* through the April 10, 2020 Notice mailed on behalf of Justin Mears, and in the filing Mears v. All-Clad Metalcrafters, LLC, et al., 3:20-cv-02662-SI (N.D. Cal.) on April 16, 2020; by Carol Egidio in her November 11, 2020 Notice pursuant to Mass. Gen. Laws Chapter 93A, §§ 2 & 9 sent contemporaneous with the filing Egidio v. All-Clad Metalcrafters, LLC, et al., 1:20-cv-12025 (D. Mass.); and Montalvo v. All-Clad Metalcrafters, LLC, et al., 9:20-cv-82384-RAR (S.D. Fl.) on December 22, 2020.

144.    Plaintiffs, individually and on behalf of the Class, provided Defendants with additional notice of their breaches of warranties, violations of O.C.G.A. § 10-1-370, *et seq.*, and O.C.G.A § 10-1-390, *et seq* via letter to Defendants' counsel, dated January 6, 2020.

<u>**FIRST CLAIM FOR RELIEF**</u>
**Breach of Implied Warranties**
**(Plaintiffs Individually and on Behalf of All Others Similarly Situated)**

145.    Plaintiffs hereby re-allege and incorporate all allegations raised in the preceeding Paragraphs 1-144 into this cause of action and claim for relief as if fully set forth herein.

146.    Plaintiffs brings this cause of action individually and on behalf of the Class.

147.    All-Clad is a merchant and was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Cookware.  All-Clad knew or had reason to know of the specific use and care for which the Cookware, as goods, were purchased.

148.    All-Clad provided Plaintiffs and Class Members with implied warranties that the Cookware were merchantable and fit for the ordinary purposes for which they were used and sold, and were not otherwise injurious to consumers.

149.    However, the Cookware is not fit for its ordinary purpose of providing reasonably reliable and safe method of cooking food and dishwasher cleaning because, *inter alia*, the Cookware contains a Defect preventing the Cookware from safely dishwashed and used without deterioration leading to sharp edges and an unreasonably dangerous condition.  Therefore, the Cookware are not fit for their particular purpose of safely cooking food and being cleaned in the dishwasher.

150.    The problems associated with the Defect, such as deterioration to sharp edges, are safety risks such that the Cookware do not provide safe and reliable cookware, and therefore, there is a  breach of the implied warranty of merchantability.

151.    Plaintiffs and each of the members of the class have had sufficient direct dealings with either All-Clad or one of its agents to establish privity of contract between All-Clad, on the one hand, and Plaintiffs and each of the  members of the class, on the other hand. Notwithstanding, privity is not required because Plaintiffs and each of the members of the class are the indended beneficiaries of All-Clad's written warranties and its relationships with retailers. The retailers were not intended to be the ultimate consumers of the Cookware, and have no rights under the warranty agreements provided by All-Clad.  All-Clad's warranties were designed for and intended to beneit the consumer only and Plaintiffs and Class Members were the intended consumers of the Cookware.

152.    All-Clad impliedly warranted that the Cookware were of merchantable quality and fit for such use.  These implied warranties included, among other things: (i) a warranty that the Cookware manufactured, supplied, distributed, and/or sold by All-Clad were safe and reliable for

cooking food; (ii) a warranty that the Cookware was dishwasher safe; and (iii) a warranty that the Cookware would be fit for their intended use while the Cookware were being used.

153.    Contrary to the applicable implied warranties, the Cookware, at the time of sale and thereafter, was not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe methods of cooking food or being cleaned in the dishwasher.  Instead, the Cookware suffers from a defective design and/or manufacture, as alleged herein.

154.    All-Clad's failure and inability, to adequately repair or replace the defective Cookware has caused the warranty to fail of its essential purpose.

155.    All-Clad breached the implied warranties because the Cookware was sold with the Defect, which substantially reduced and/or prevented the Cookware from being used for safe food preparation and dishwasher cleaning.

156.    As a direct and proximate result of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## SECOND CLAIM FOR RELIEF
### Breach of Express Warranty
**(Plaintiffs Individually and on Behalf of All Others Similarly Situated)**

157.    Plaintiffs hereby re-allege and incorporate all allegations raised in the preceeding Paragraphs 1-144 into this cause of action and claim for relief as if fully set forth herein.

158.    In connection with its sale of the Cookware, All-Clad expressly warranted that they were free from defects at the time of shipping, were dishwasher safe, and suitable for cooking food.

159.    The defectively designed Cookware is subject to and otherwise covered by All-Clad's Warranty, which applies to each piece of Cookware.

160.    Each of the three Cookware models has an identical or substantially identical warranty and dishwasher safe representations.

161.    All-Clad was obligated, under the terms of the express warranty to adequately repair or replace the defective Cookware for Plaintiffs and Class Members.

162.    In its Warranty, All-Clad warrants "that any All-Clad cookware item purchased by you, the original purchaser, from All-Clad or an All-Clad authorized retailer will be free from defects in material, construction, or workmanship for the lifetime of the product under normal use and following care instructions. All-Clad will repair or replace the All-Clad cookware product in the country of purchase that is covered by this warranty." As alleged herein, the Cookware are not free from defects in workmanship and materials at the time they are "shipped" and thus the warranty is breached at the point of sale, but said breach is only discovered at the time the Defect has manifested.

163.    All-Clad further breached the warranty because it improperly and unlawfully denies valid warranty claims, and is unable to adequately repair or replace the Cookware with non-defective Cookware.

164.    Plaintiffs and the Class Members have privity of contract with All-Clad through their purchase of the Cookware, and through the express written and implied warranties that All-Clad issued to its customers.

165.    All-Clad further expressly warranted to Plaintiffs and Class Members that the Cookware is dishwasher safe, and did so through:

(e)     Cookware packaging;

(f)     Use and Care Manuals and Instructions;

(g)     The All-Clad Website in numerous locations, including *inter alia*:

   i.   Stainless Steel Cookware Brochures;

   ii.  Stainless Steel FAQs; and

      iii.   On individual piece and multi-piece specifications;[32]

  (h)     Retailer websites, including Crate & Barrel's.

166.   All-Clad's warranties accompanied the Cookware and were intended to benefit end-users of the Cookware. To the extent Class Members purchased the Cookware from third-party retailers, privity is not required because the Class Members are intended third-party beneficiaries of the contracts between All-Clad and third-party retailers and because the express warranty is intended to benefit purchasers or owners subsequent to the third-party retailer; in other words, the contracts are intended to benefit the ultimate consumer or user of the Cookware.

167.   The express warranties covering the Cookware were a material part of the bargain between All-Clad and consumers. At the time it made these express warranties, All-Clad knew of the purpose for which Cookware were to be used and cleaned in the dishwasher.

168.   All-Clad breached its express warranties by selling Cookware that were, in actuality, not free of defects, not made for a lifetime of safe and reliable use, not made from merchantable material and workmanship, was unsafe for use, not dishwasher safe, and could not be used for the ordinary purpose of cooking food.  All-Clad breached its express written warranties to Plaintiffs and Class Members in that the Cookware is defective at the time they leave the manufacturing plant, and on the first day of purchase, creating a serious safety risk to Plaintiffs and Class Members.

169.   The Cookware that Plaintiffs and Class Members purchased contained a Defect that caused each of them damages including loss of the product, loss of the benefit of their bargain, and property damage.

170.   Any limitations on remedies and the exclusions in All-Clad's warranties are unconscionable and unenforceable in light of the fact that All-Clad knew that the Cookware

---

[32] *E.g.* https://www.all-clad.com/Cookware/Fry-Pans/D3-Stainless-12%22-Fry-Pan-with-Lid/p/8701005165; and https://www.all-clad.com/Cookware/D3-Compact-5-Piece-Set/p/8400001921. (Last Accessed April 13, 2020).

suffered from the Defect described herein.

171.   Plaintiffs and Class Members notified All-Clad of its breach of the express warranty shortly after their Cookware failed to perform as warranted due to the Defect. Nonetheless, All-Clad refused to make anyone available to take Plaintiffs' call, and otherwise denied claims, inaccurately informed Class Members that the use of citrus dishwasher detergents were at fault, and/or futilily replaced Class Members' Cookware with more defective Cookware.

172.   Moreover, All-Clad was put on constructive notice about its breach through its review of consumer complaints and media reports described herein, and, upon information and belief, through product testing.

173.   Upon information and belief, All-Clad received further notice and has been on notice of the defective nature of the Cookware and of its breaches of warranties through customer warranty claims reporting problems to All-Clad, consumer complaints at various sources, and its own internal and external testing.

174.   Despite having notice and knowledge of the defective nature of the Cookware, All-Clad failed to provide take Plaintiffs' call and otherwise provide non-defective replacement Cookware to Plaintiffs and Class Members, and otherwise failed to offer any appropriate compensation from the resulting damages.

175.   All-Clad breached its express warranty to adequately repair or replace the Cookware despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing the Cookware.

176.   To the extent that All-Clad offered to replace the defective Cookware, the warranty of replacement fails in its essential purpose given the replacement Cookware likewise contains the Defect, resulting in the same safety risks to the owners, and the same or similar damages can occur to the replacement Cookware.

177.     Accordingly, recovery by Plaintiffs and Class Members is not limited to the limited warranty of replacement, and they seek all remedies allowed by law.

178.     Had Plaintiffs, Class Members, and the consuming public known that the Cookware was defective, posed an unreasonable risk of harm to themselves and others, would cause damage, or that All-Clad would not and could not properly honor its warranty, they would not have purchased the Cookware.

179.     To the extent any express warranties do not by their terms cover the Defect alleged in this Complaint, and to the extent the contractual remedy is in any other respect insufficient to make Plaintiffs and Class Members whole, the warranty fails of its essential purpose and, accordingly, recovery by Plaintiffs and Class Members are not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

180.     Any attempt by All-Clad to limit or disclaim the express warranty in a manner that weould exclude coverage of the Defect is unconscionable as a mater of law because the relevant purchase transactions were taited by All-Clad's concealment of matieral facts.  Thus, any such effort to disclaim, or otherwise limit, its liability for the Defect is null and void.

181.     Plaintiffs and Class Members have performed all duties required of them under the terms of the express warranty, except as may have been excused or prevented through the conduct of All-Clad or by operation of law in light of All-Clad's conduct described throughout this Complaint.

182.     All-Clad has received timely notice regarding the problems at issue in this litigation, and notwithstanding, All-Clad has failed and refused to offer an effective remedy.

183.     As a direct and proximate result of All-Clad's breach of its express written warranties, Plaintiffs and Class Members have suffered damages and did not receive the benefit of the bargain and are entitled to recover compensatory damages, including, but not limited to the cost of inspection, repair and diminution and value.

<u>**THIRD CLAIM FOR RELIEF**</u>
<u>**(IN THE ALTERNATIVE)**</u>
**Breach of Contract**
**(Plaintiffs Individually and Behalf of All Others Similarly Situated)**

184.    Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding Paragraphs 1-144 into this cause of action and claim for relief as if fully set forth herein.

185.    To the extent All-Clad's commitment is deemed not to be a warranty under Georgia's Uniform Commercial Code, Plaintiffs pleads in the alternative under common law warranty and contract law.

186.    Plaintiffs and Class Members purchased the Cookware from All-Clad or through retailers such as Crate & Barrel, Williams-Sonoma, amazon.com, and other retailers.

187.    All-Clad expressly warranted that the Cookware was fit for its intended purpose, was dishwasher safe, and that it was free of defects, and suitable for safe cooking of food.

188.    All-Clad made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiffs, Class Members, and All-Clad.

189.    All-Clad breached the warranties and/or contract obligations by placing the defective Cookware into the streat of commerce and selling it to consumers, when it knew the Cookware contained a Defect, was not dishwasher safe, and was prone to premature failure. These deficiencies substantially and/or completely impair the use and value of the Cookware.

190.    The deficiencies described existed when the Cookware left All-Clad's possession or control and were sold to Plaintiffs and Class Members.  The deficiencies and impairment of the use and value of the Cookware was not discoverable by Plaintiffs or Class Members at the time of the purchase of the Cookware.

191.    As a direct and proximate cause of All-Clad's breach of contract, Plaintiffs and Class Members were harmed because they would not have purchased the Cookware if they knew the truth about the defective condition of the Cookware.

**FOURTH CLAIM FOR RELIEF**
**(IN THE ALTERNATIVE)**
**Unjust Enrichment**
**(Plaintiffs Individually and Behalf of All Others Similarly Situated)**

192.    Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding Paragraphs 1-144 into this cause of action and claim for relief as if fully set forth herein.

193.    This alternative claim is asserted on behalf of Plaintiffs and Class Members to the extent there is any determination that any contracts between Class Members and All-Clad do not govern the subject matter of the disputes with All-Clad, or that Plaintiffs does not have standing to assert any contractual claims against All-Clad.

194.    Plaintiffs and Class Members conferred a monetary benefit on All-Clad, and All-Clad had knowledge of this benefit. The cost of a single piece of the Cookware is between $80.00 and $500.00 MSRP, and the cost of an entire set is priced as high as $1,600.00 MSRP.

195.    By its wrongful acts and omissions described herein, including selling the defective Cookware, All-Clad was unjustly enriched at the expense of Plaintiffs and Class Members.

196.    Plaintiffs and Class Members' detriment and All-Clad's enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

197.    It would be inequitable for All-Clad to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the defective Cookware.

198.    Plaintiffs and Class Members seek restitution from All-Clad and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by All-Clad from their wrongful conduct and establishing a constructive trust from which Plaintiffs and Class Members may seek restitution.

**FIFTH CLAIM OF ACTION**
**Violation Of the Georgia Fair Business Practices Act**
**O.C.G.A. § 10-1-390, *et seq*.**

CLASS ACTION COMPLAINT

**(Plaintiffs Individually and Behalf of All Others Similarly Situated)**

199.    Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding Paragraphs 1-144 into this cause of action and claim for relief as if fully set forth herein.

200.    The conduct described herein took place within the State of Georgia and constitutes deceptive acts and practices, which were directed at consumers, and are violations of Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, et seq. ("FBPA").

201.    All-Clad's foregoing deceptive acts and practices, including their omissions, were material, in part, because they concerned an essential part of the safety, durability, and functionality of the Cookware. All-Clad, when it marketed, advertised and sold the Cookware, represented to Plaintiffs and Class Members that the Cookware was free of defects and was safe for dishwasher cleaning, despite the fact that the Cookware was defective, not dishwasher safe, and prone to failure. All-Clad omitted the defective condition and misrepresented the dishwasher safety in its packaging, sale, and subsequent warranty communications with Plaintiffs and Class Members.   These omissions and representations were material facts to Plaintiffs and Class Members when selecting the Cookware.

202.    At the time of its misrepresentations and omissions, All-Clad was either aware that the Cookware was defective and not dishwasher safe, or was aware that it lacked the information and/or knowledge required to make such a representation truthfully. All-Clad concealed, omitted and failed to disclose this information to Plaintiffs and Class Members.

203.    Rather than disclose its knowledge of the defective condition and that the Cookware is not dishwasher safe, All-Clad engaged in and continued a widespread uniform, marketing, and advertising campaign that misrepresented the Cookware as being free of defects, dishwasher safe, and suitable for safely handling and cooking food.

204.    All-Clad's descriptions and advertisements of the Cookware were false, misleading, and likely to deceive Plaintiffs and other reasonable consumers.

205.    The FBPA declares unlawful any "unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." O.C.G.A. § 10-1-393.

206.    Included in unlawful conduct under the FBPA is "Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;" O.C.G.A. § 10-1-393(b)(7).

207.    Defendants are both a "person" as defined by ty O.C.G.A. § 10-1-392.

208.    Plaintiffs and Class Members are consumers as defined by O.C.G.A. § 10-1-392.

209.    Defendants' sale of the Cookware is a "consumer transaction," and is "trade" and "commerce" as defined by O.C.G.A. § 10-1-392.

210.    The Cookware pieces are "goods" within the meaning of O.C.G.A. § 10-1-390, *et seq.*

211.    Defendant engaged in unfair and deceptive trade practices through the following conduct:

a.    Having extensive knowledge of the defective nature of the Cookware and failing to disclose to Plaintiffs and Class Members;

b.    Representing the Cookware is dishwasher safe;

c.    Representing that the Cookware were suitable for heating food, when they were not following deterioration from dishwasher use.

d.    Conveying a Warranty with the sale of its Cookware when it does not intend to honor the Warranty by replacing the Cookware with dishwasher safe Cookware;

e.    In failing to disclose to the Plaintiffs and Class Members that the Cookware:

(i) were defective;

(ii) were not dishwasher safe;

CLASS ACTION COMPLAINT

(iii) were not suitable for heating food following deterioration in the dishwasher;

(iv) would prematurely fail;

(v) cannot be expected to fulfill their service life; and

(vi) would pose a safety hazard to individuals and their property once the Cookware becomes deteriorated.

212.    All-Clad's conduct caused actual confusion and actual misunderstanding with Plaintiffs and Class Members, in that they believed they were purchasing and using Cookware free of defects; were dishwasher safe; suitable for safely preparing food and handle; of high quality; would not prematurely fail; were not a safety hazard;  and came with a Warranty that the Defendant would honor.

213.    In fact, All-Clad's statements were false and misleading in that the Cookware is not free of defects; is not dishwasher safe; not suitable for safely preparing food and handling; not of high quality; would prematurely fail; were a safety hazard;  and came with a Warranty that the All-Clad is unable to honor and otherwise fails of its essential purpose. Had Plaintiffs and Class Members known All-Clad's statements were false or misleading, they would not have purchased the Cookware.

214.    As a proximate consequence of All-Clad's improper conduct, the Plaintiffs and Class Members were injured, including not receiving the value of the product they purchased, loss of the Cookware, personal injury and damage to other property.

215.    Defendants were put on notice of violations of O.C.G.A. § 10-1-390, *et seq.* more than 30 days prior to the filing of this Complaint via the April 10, 2020 Notice mailed on behalf of Justin Mears, and in the filing Mears v. All-Clad Metalcrafters, LLC, et al., 3:20-cv-02662-SI (N.D. Cal.) on April 16, 2020; by Carol Egidio in her November 11, 2020 Notice pursuant to

Mass. Gen. Laws Chapter 93A, §§ 2 & 9 sent contemporaneous with the filing Egidio v. All-Clad Metalcrafters, LLC, et al., 1:20-cv-12025 (D. Mass.); and Montalvo v. All-Clad Metalcrafters, LLC, et al., 9:20-cv-82384-RAR (S.D. Fl.) on December 22, 2020.

216.    Plaintiffs provided Defendants with additional notice of their FBPA claims via letter to Defendants' counsel, dated January 6, 2020.

217.    Plaintiffs and the Class Members suffered damages when they purchased the Cookware.  All-Clad's unconscionable, deceptive and/or unfair practices caused damages to Plaintiffs and Class Members who were unaware that the Cookware were defective, not dishwasher safe, and were prone to premature failure.

### SIXTH CLAIM OF ACTION
### Violation of Georgia's Uniform Deceptive Trade Practices Act
### (O.C.G.A. § 10-1-370, *et seq.*)

218.    Plaintiffs hereby re-allege and incorporate all allegations raised in the preceding Paragraphs 1-144 into this cause of action and claim for relief as if fully set forth herein.

219.    Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Georgia's Uniform Deceptive Trade Practices Act ("Georgia UDTPA"). O.C.G.A. § 10-1-371(5).

220.    The Georgia UDTPA prohibits "deceptive trade practices" which include the "misrepresentation of standard, quality, or grade of goods and services," "engaging in any other conduct which similar creates a likelihood of confusing or misunderstanding," and representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have," and "[a]dvertising goods or services with intent not to sell them as advertised." O.C.G.A. § 10-1-372.

221.    By misrepresenting that the Cookware is dishwasher safe and otherwise failing to disclose the nature of the Defect in the Cookware to Plaintiffs and Class Members, All-Clad engaged in deceptive trade practices in violation of the Georgia UDTPA, because All-Clad represented that the Cookware had characteristics and benefits that they do not have, and

represented that the Cookware were of a particular standard, quality, or grade  when they were of another. See O.C.G.A. §§ 10-1-372(5), (7), (9).

222.    All-Clad advertised the Cookware as dishwasher safe with the intent not to sell it as advertised given its knowledge it was not dishwasher safe, in violation of O.C.G.A. §10-1-372.

223.    All-Clad's unfair and deceptive acts or practices occurred repeatedly in All-Clad's course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm on owners and purchasers of the Cookware.

224.    All-Clad knew, by at least 2016, including two years before Plaintiffs purchasedtheir Cookware, that the Cookware suffered from the dangerous Defect, was not dishwasher safe, and was not suitable for their intended use.

225.    All-Clad had exclusive knowledge of material facts concerning the existence of the Defect in the Cookware and that the Cookware is not dishwasher safe, however, All-Clad actively concealed the Defect from consumers by denying the existence of the Defect to consumers complaining about the Defect and continuing to represent the Cookware to be dishwasher safe.

226.    All-Clad was under a duty to Plaintiffs and Class Members to disclose the defective nature of the Cookware because, inter alia:

     (a)    All-Clad was in a superior position to know the true state of facts about the Defect and dishwasher safety; and

     (b)    Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Cookware had the Defect and were not dishwasher safe at the time of purchase (and before damage occurred to the Cookware).

227.    Despite possessing information to the contrary, All-Clad misrepresented the Cookware to be dishwasher safe and otherwise failed to disclose and actively concealed the Defect while continuing to market and sell the Cookware.

228.    All-Clad knew or should have known that its conduct violated the Georgia UDTPA.

229.    In misrepresenting the Cookware as dishwasher safe, failing to disclose the defective nature of the Cookware, and denying and misleading consumers as to the Defect and dishwasher safety, All-Clad knowingly and intentionally concealed material facts and breached its duty not to do so.

230.    The facts All-Clad misrepresented to, and concealed from Plaintiffs and Class Members were material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Cookware. Moreover, a reasonable consumer would consider the Defect and lack of dishwasher safety to be an undesirable quality, as Plaintiffs and Class Members did. Had Plaintiffs and Class Members known that the Cookware had the Defect, they would not have purchased the Cookware, or would have paid less for them.

231.    As a result of All-Clad's misconduct, Plaintiffs and Class Members have been harmed and suffered actual damages in that the Cookware has a serious safety Defect, is not dishwasher safe, causing inconvenience, and the inability to safely handle, clean, or use the Cookware to prepare food.

232.    As a direct and proximate result of All-Clad's unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

233.    All-Clad's violation presents a continuing risk to Plaintiffs and the general public, as it continues to make some representations that the Cookware is dishwasher safe and continues to replace defective Cookware with more defective Cookware under the warranty.  All-Clad's unlawful acts and practices complained of herein affect the public interest.

234.    Defendants were put on notice of violations of O.C.G.A. § 10-1-370, *et seq.* more than 30 days prior to the filing of this Complaint via the April 10, 2020 Notice mailed on behalf of Justin Mears, and in the filing Mears v. All-Clad Metalcrafters, LLC, et al., 3:20-cv-02662-SI (N.D. Cal.) on April 16, 2020; by Carol Egidio in her November 11, 2020 Notice pursuant to Mass. Gen. Laws Chapter 93A, §§ 2 & 9 sent contemporaneous with the filing Egidio v. All-Clad Metalcrafters, LLC, et al., 1:20-cv-12025 (D. Mass.); and Montalvo v. All-Clad Metalcrafters,

LLC, et al., 9:20-cv-82384-RAR (S.D. Fl.) on December 22, 2020.

235.   Plaintiffs provided Defendants with additional notice of their FBPA claims via letter to Defendants' counsel, dated January 6, 2020.

236.   As a direct and proximate result of All-Clad's violations of the Georgia UDTPA, Plaintiffs and Class Members have suffered injury-in-fact and/or actual damage.

237.   Plaintiffs seek an order enjoining All-Clad's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA and applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselvs and all others similarly situated, respectfully requests that this Court:

A.  Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.  Name Plaintiffs as Class Representatives andtheir counsel as Class Counsel;

C.  Award damages, including compensatory, exemplary, and statutory damages, to Plaintiffs and the Class in an amount to be determined at trial;

D.  Grant restitution to Plaintiffs and the Class and require All-Clad to disgorge its ill-gotten gains;

E.  Permanently enjoin All-Clad from engaging in the wrongful and unlawful conduct alleged herein;

F.  Award Plaintiffs and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

G.  Award Plaintiffs and the Class pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

H.  Award such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED:  January 7, 2021                    Respectfully submitted,

                                           /s/ Harper T. Segui
                                           Harper T. Segui
                                           Daniel K. Bryson
                                           **WHITFIELD BRYSON, LLP**
                                           900 W. Morgan Street
                                           Raleigh, NC 27603
                                           T: 919-600-5000
                                           harper@whitfieldbryson.com
                                           dan@whitfieldbryson.com


                                           Rachel Soffin
                                           **GREG COLEMAN LAW PC**
                                           800 S. Gay Street, Suite 1100
                                           Knoxville, TN 37929
                                           T: 865-247-0080 F: 865-522-0049
                                           rachel@gregcolemanlaw.com